UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

I TAN TSAO, individually and on
behalf of all others similarly situated,

      Plaintiff,

vs.                             Case No. 8:18-cv-01606-T-23SPF

CAPTIVA MVP RESTAURANT      **DISPOSITIVE MOTION**
PARTNERS, LLC,

      Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT WITH PREJUDICE

Defendant, CAPTIVA MVP RESTAURANT PARTNERS, LLC ("Defendant" or "PDQ"),[1] through undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7) and 19, hereby moves to dismiss Plaintiff's Class Action Complaint with prejudice for failure to satisfy Article III standing, to state a claim upon which relief can be granted, and/or for failure to join indispensable parties.

## INTRODUCTION

Plaintiff filed his Class Action Complaint ("Complaint") in this "data breach" litigation immediately after PDQ posted a June 22, 2018 "Notice To Guests From PDQ" alerting customers of a cyber-attack by a third-party "hacker" on part of the restaurant's computer-related system from May 19, 2017 until April 20, 2018 (the "Data Breach").

---

[1] Plaintiff has brought suit against Captiva MPV Restaurant Partners, LLC only, which he alleges is a limited liability company "doing business as PDQ." Captiva, however, has an ownership interest in only some of the PDQ restaurant locations, while other PDQ restaurants are independently owned and operated.

Compl. ¶ 60.  In the notice, PDQ fully and promptly informed its customers that the company had "learned on June 8, 2018" – only 2 weeks before the notice was posted – that "credit card information and/or some names *may* have been hacked."  *Id.* (emphasis added).[2]  PDQ further advised in the notice that "[i]f you used your credit card for your purchase at a PDQ restaurant during the breach period, then your credit card number, expiration date, card holder verification value and/or name *may* have been accessed or acquired by a hacker."  *Id.* (emphasis added).  PDQ cautioned its customers to "remain vigilant in reviewing [their] account statements closely, monitoring free credit reports, and report[ing] any unauthorized charges to [their] credit issuer immediately."  *Id.*

Less than <u>two</u> <u>weeks</u> after PDQ posted the June 22, 2018 notice, Plaintiff filed a putative Class Action Complaint on his own behalf and on behalf of customers outside of Florida who used payment cards for transactions at affected PDQ restaurants from May 19, 2017 to April 20, 2018, alleging that the customers' "private Customer Data was *compromised* due to PDQ's . . .  failure to properly protect the Customer Data" and "has been *exposed* to criminals for misuse."  *Id.* ¶¶ 2-3, 9 (emphasis added).[3]  However, Plaintiff has not identified a single incident involving an actual misuse of the credit card information,

---

[2] Under section 501.171(4), Florida Statutes, a commercial entity is required to provide notice to individuals of a security breach "no later than 30 days after the determination of a breach or reason to believe a breach occurred unless subject to [an authorized] delay."  A "breach" is defined in the statute to mean an "unauthorized access of data in electronic form containing personal information."  *See* § 501.171(1)(a), Fla. Stat. "Personal information," in turn, is defined in the statute to mean "[a]n individual's first name or first initial and last name *in combination with* any one or more" of certain "data elements for that individual" set forth in the statute.  *See* § 501.171(1)(g)1.a.  Included among the "data elements" are a "financial account number or credit or debit card number, in combination with any required security code, access code or password that is necessary to permit access to an individual's financial account."  *Id.*  Therefore, PDQ was required to provide notice to individuals within 30 days of determining that a "[b]reach of security" *as defined in the statute* had occurred, which it did by providing notice on June 22, 2018.  Compl. ¶ 60.

[3] Even if Plaintiff were able to survive a dismissal of his claims, the evidence would show that the measures PDQ took to protect its customer data were not only reasonable, but  exceeded all pertinent standards.

much less any misuse of the information resulting from the PDQ Data Breach causing any of the customers any <u>actual</u> <u>injury</u>.[4]  He instead merely alleges, in a conclusory fashion, that he and "other class members" have suffered various general and non-specified injuries as a result of the Data Breach – but he does not set forth any specific facts supporting the existence of any <u>actual</u> <u>injuries</u> arising out of the Data Breach, such as any monetary loss suffered by any PDQ customer as a result of the breach.  Instead, all of his claims are premised on a fear that his credit card information may be misused at some point in the future, and on prophylactic actions he has preemptively and voluntarily taken to avoid that "risk."[5]  But because Plaintiff elected to cancel his credit cards <u>before</u> any misuse had occurred (or likely would occur, given the period of time that has passed since the breach), he has foreclosed his ability to allege damages in the future.

Plaintiff's conclusory allegations of injury fail to satisfy his burden of establishing Article III standing under governing case law.  *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"); *Clapper v. Amnesty Int'l U.S.A.,* 133 S. Ct. 1138, 1147 (2013) ("[W]e have repeatedly reiterated that 'threatened injury must be certainly *impending* to constitute injury in fact' and that '[a]llegations of *possible* future injury' are not

---

[4] Plaintiff alleges that a "wave of data breaches caused by the theft of retail payment card information has hit the United States in the last several years" and that the "number of U.S. data breaches surpassed 1,000" alone in 2016.  Compl. ¶¶ 28, 29.  Given this description, it is questionable how Plaintiff or any putative class member could <u>trace</u> any misuse of credit cards (which Plaintiff has not alleged) to the PDQ Data Breach.

[5] Although Plaintiff alleges that PDQ failed to safeguard its customers' credit and "debit" card numbers, PDQ's payment system does not have key pads for debit card PIN information and uses debit cards as credit cards only. For this reason, the data breach notice mentions "credit" card information only.  Compl. ¶ 60.

sufficient.") (emphasis added); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (plaintiffs adequately pled an "injury in fact" because they alleged "actual" and "not speculative" identify theft).

Because Plaintiff has not alleged any facts establishing that he or any other member of the putative class has suffered an actual injury in fact arising out of the Data Breach as required under governing law, the Complaint should be dismissed with prejudice under Rule 12(b)(1) for failure to satisfy Article III standing.   In addition, the Complaint should be dismissed with prejudice for failure to state a cause of action under Rule 12(b)(6) because of Plaintiff's inability to allege any facts establishing that he has or will suffer any monetary damage as a result of the Data Breach and to satisfy other elements of his claims.   And finally, the Complaint should be dismissed under Rule 12(b)(7) based on Plaintiff's failure to join indispensable parties, *i.e.*, independent owners of PDQ restaurants he alleges are implicated in the Data Breach.

## PLAINTIFF'S FACTUAL ALLEGATIONS

A "complaint must contain enough facts to make a claim for relief plausible on its face" and a "party must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"   *Resnick*, 693 F.3d at 1324-25 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). [6]   The Complaint in this case, however, is devoid of a single factual allegation establishing that Plaintiff has suffered an injury in fact arising out of the PDQ Data Breach sufficient to confer Article III standing.   In

---

[6] Although well-pled allegations of a complaint must be taken as true for purposes a motion to dismiss, *Iqbal*, 556 U.S. at 678, pleadings that are "no more than conclusions are not entitled to the assumption of truth."   *Id.* at 680.

fact, when the generalized and conclusory allegations are eliminated from consideration, there are very few allegations remaining in the Complaint, and none that establish any injury in fact to the Plaintiff or anyone else resulting from the Data Breach. Even the "Statement of Facts" section of the Complaint contains mostly rhetoric, irrelevant commentary concerning the mindset of a hacker, and anecdotal references to non-specified data breaches occurring at other businesses, which have no bearing on the claims in this case.

Pared to the core, therefore, the only factual allegations in the Complaint offered in support of Plaintiff's claims are as follows:

¶28.   On October 8, 2017, Plaintiff purchased food at an affected PDQ restaurant in Pinellas Park, Florida, using his payment card.

¶29.   On October 31, 2017, Plaintiff purchased food again at an affected PDQ restaurant in Pinellas Park, Florida, using his payment card.

¶30.   Plaintiff paid for one of the aforementioned purchases with his Wells Fargo Reward VISA, and paid for the other with his Chase Reward VISA.

¶31.   Plaintiff made additional purchases at other effected PDQ locations during the breach period with either of the aforementioned payment cards.

¶32.   The two payment cards Plaintiff used and which were compromised in the Data Breach were connected to a VISA rewards program. When Plaintiff learned of the breach, Plaintiff notified Wells Fargo and Chase. As a result, Plaintiff's cards were cancelled. While Plaintiff is awaiting Plaintiff's new rewards credit cards, Plaintiff has to use alternative methods of payment and, thus, has lost the opportunity to accrue those rewards. Additionally, Plaintiff has several accounts set to auto pay using these cards that will need to be reset in addition to the hassle of having to replace the cards.[7]

\* \* \*

---

[7] This allegation establishes that any inconvenience Plaintiff has suffered from the Data Breach is the result of his own preemptive decision to cancel his credit cards immediately after receiving notice of the Data Breach, without any evidence of an actual misuse of his information.

¶20.[8]   When customers pay using credit or debit cards, PDQ collects Customer Data related to those cards including the cardholder name, the account number, expiration data, card verification value ("CVV"), and PIN data for debit cards.  PDQ stores the Customer Data in its POS system and transmits this information to a third party for processing and completion of the payment.[9]

* * *

¶57.   Beginning on May 19, 2017, "[a]n unauthorized person (hacker) exploited part of [PDQ's] computer related system and accessed and/or acquired personal information from some of [PDQ's] customers."

* * *

¶60.   The breach became public on June 22, 2018, through PDQ's announcement.  The announcement came almost one year after the Data Breach began, and two months after the Data Breach was detected . . ..[10]

The June 22, 2018 "Notice to Guests from PDQ" posted on the website (*https://www.eatpdq.com/promos/news/2018/6/22guest info.*) and depicted at paragraph 60 of the Complaint is submitted with this motion as Exhibit "1."

Plaintiff alleges that the Data Breach began over a year ago on May 19, 2017, yet he fails to identify a single misuse of his or any other putative class member's credit card information, much less one that can be traced to the PDQ breach.[11]  Instead, he simply

---

[8] The allegations of the Complaint are inconsistently numbered, with paragraph 32 preceding paragraph 20.

[9] The Seventh Circuit has recently explained how this electronic payment card system works, stating that "[c]ard – issuing banks and credit unions are required by federal law to indemnify their card-holding customers for losses from fraudulent activity."  *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F. 3d 803, 807 (7th Cir. 2018) (citing 15 U.S.C. § 1643(a) (limiting credit-card-holder liability for unauthorized use) and 12 C.F.R. § 205.6 (limiting debit-card-holder liability for unauthorized use)).

[10] The June 22, 2018 "Notice to Guests from PDQ" was promptly made two <u>weeks</u> after PDQ confirmed a "breach" had occurred within the meaning of section 501.171(1)(a), not two <u>months</u> as alleged in paragraph 60 of the Complaint.

[11] In addition to alleging an actual injury resulting from a data breach, a plaintiff also must allege facts establishing that the injury is "fairly traceable" to the defendant's actions.  *See, e.g., Resnick*, 693 F. 3d at 1324. Even if he were able to allege a specific and actual injury in fact, it is debatable whether Plaintiff could meet the

alleges, in a conclusory fashion, that he and other "class members" have been placed at an increased "risk of harm" as a result of the Data Breach and have suffered the following unspecified "damages" relating to their <u>fear</u> that the credit card information may be misused at some time in the future:

> ¶80.  As a direct and proximate result of PDQ's wrongful actions and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at in imminent, immediate and continuing increased *risk of harm* from identity theft and identity fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports.  This time has been lost forever and cannot be recaptured.  In all manners of life in this country, time has constantly been recognized as compensable, for many consumers it is the way they are compensated, and even if retired from the work force, consumers should be free of having to deal with the consequences of a retailer's slippage, as is the case here.

Compl. ¶ 80 (emphasis added).  Although Plaintiff further alleges in a conclusory fashion that he and other class members have suffered "actual harm" as a result of the Data Breach, he fails to include any factual specificity regarding the date or nature of any such injuries, any actual misuse of the credit card information, or the monetary value associated with any such purported misuse of the information.  Compl. ¶ 81.  In short, notwithstanding his preparation of a forty-five (45) page Complaint, Plaintiff has not identified a single specific, concrete, injury in fact he or anyone else has suffered as a result of any misuse of customer credit card information stemming from the PDQ Data Breach anywhere within the four-corners of the pleading.

---

"fairly traceable" standard given his acknowledgment of other data breaches at national restaurant chains and the possibility that Plaintiff has used his payment card at these or other affected locations.  Compl. ¶ 61.

## STANDARD OF REVIEW

Defendant moves to dismiss the Complaint for lack of subject-matter jurisdiction under Rule 12(b)(1).  Plaintiff has the burden of proving that subject-matter jurisdiction exists.  *See Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1273 (11th Cir. 2000).  In order to meet that burden, Plaintiff must plead sufficient <u>factual</u> information to support a finding of Article III standing.  *See Spokeo*, 136 S. Ct. at 1545 ("As we have explained in our prior opinions, the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'"); *Warth v. Seldin,* 422 U.S. 490, 518 (1975) ("A plaintiff at the pleading stage must 'clearly … allege facts demonstrating' each element of the cause of action"); *Resnick*, 693 F.3d at 1324-25 ("complaint must contain enough facts to make a claim for relief plausible on its face; a party must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'") (quoting *Iqbal*, 556 U.S. at 678); *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20 (1976) (quoting *Warth*, 422 U.S. at 502) ("Even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'").

Defendant also moves to dismiss the Complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  Plaintiff has the burden of alleging facts sufficient "to raise [his] right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must allege sufficient facts to show that the legal allegations are not simply possible, but plausible."  *Torres v. Wendy's Int'l, LLC*, No. 6:16-cv-210-Orl-40DAB, 2017 WL 8780453,

*3 (M.D. Fla. March 21, 2017) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555). In this regard, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" in order to satisfy the heightened "plausibility" standard. *Iqbal*, 556 U.S. at 678; *see also Resnick*, 693 F.3d at 1324-25 ("Complaint must contain enough facts to make a claim for relief plausible on its face" and pleadings that are "no more than conclusions, are not entitled to the assumption of truth") (citing *Iqbal*, 556 U.S. at 678, 680).

Finally, Defendant moves to dismiss the Complaint under Rule 12(b)(7) for "failure to join a party under Rule 19," in light of Plaintiff's attempt to establish a nationwide class of customers who purportedly purchased food using credit cards at various PDQ restaurants, which could necessarily implicate PDQ restaurants independently owned and operated by entities other than Captiva. *See, e.g., Fla. Wildlife Federation, Inc. v. United States Army Corp. of Engineers*, 859 F. 3d 1306, 1316 (11th Cir. 2017) ("a party is required" under Rule 19 if that party "is so situated that disposing of the action in the [party's] absence may … as a practical matter impair or impede the [party's] ability to protect the interest").

## MEMORANDUM OF LAW

### I.   PLAINTIFF LACKS ARTICLE III STANDING.

"[W]hether the Plaintiff has made out a 'case or controversy' between himself and the Defendant within the meaning of Art. III" is the "threshold question of every federal case, determining the power of the court to entertain the suit." *Warth*, 422 U.S. at 498. "[T]he 'irreducible constitutional minimum' of standing consists of three elements": "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  [A]t the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (citing *Warth*, 422 U.S. at 518). "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo*, 136 S. Ct. 1540 at n. 6 (citing *Simon*, 426 U.S. 26, 40, n. 20 (1976)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  "For an injury to be 'particularized,' it must 'affect the plaintiff in a personal and individual way.'" *Id*.  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548.  A plaintiff not only must "allege facts demonstrating" a "concrete and particularized" "injury in fact," *Spokeo*, 136 S. Ct. at 1547-48, the plaintiff must also allege facts demonstrating that the alleged injury is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  In this regard, "threatened injury must be certainly impending to constitute injury in fact, and '[a]llegations of possible future injury' are not sufficient." *Clapper*, 133 S. Ct. at 1147.

Plaintiff lacks standing to bring this action because he has failed to allege any facts satisfying the "injury in fact" element of Article III standing, *i.e.*, that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  In order to establish his

standing to bring this lawsuit, Plaintiff is required to allege specific facts establishing that he has been personally injured by the Data Breach. *Warth*, 422 U.S. at 502. Compl. ¶ 32. The allegations of the Complaint, however, establish that Plaintiff has suffered nothing more than the inconvenience of cancelling two credit cards based solely on his fear that his credit card information may be misused at some point in the future – not that he has suffered any monetary damage from an actual misuse of his credit card data, let alone a misuse traceable to the PDQ Data Breach.

The majority of the courts in this country have ruled that a mere increased risk of identity theft and/or fear of misuse of personal information arising out of a data breach – the type of "injury" Plaintiff alleges he has suffered as a result of the PDQ Data Breach – does not constitute a cognizable "injury in fact" sufficient to confer Article III standing. *See, e.g., In re. SuperValu, Inc.*, 870 F.3d 763, 771-72 (8th Cir. 2017) ("finding allegations of future injury do not support standing"); *Beck v. McDonald*, 848 F.3d 262, 266-67 (4th Cir. 2017) (rejecting plaintiff's attempt to establish Article III standing based on increased risk of future identity theft and the cost of measures to protect against it); *Whalen v. Michael's Stores, Inc.*, 689 Fed. Appx. 89, 90 (2d Cir. 2017) (affirming dismissal for lack of standing where plaintiff did not allege actual damages from fraudulent use of her card); *Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012) ("finding standing . . . would stretch the injury requirement past its breaking point" where plaintiff failed to allege her personal data was actually accessed or misused); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3rd Cir. 2011) (allegations of possible

future injury insufficient to satisfy the requirements of Article III standing where plaintiffs failed to allege their data was actually misused).[12]

The Eleventh Circuit has not addressed whether a data breach without an actual misuse of information or monetary loss satisfies the injury in fact element for Article III standing.  However, the Court's decision in *Resnick* suggests that the Court will follow the majority rule and conclude that it does not when the issue is presented to the Court for determination.  *Resnick*, 693 F.3d 1317 at n. 1 ("As plaintiffs have alleged only actual – not speculative – identity theft, we need not address the issue of whether speculative identity theft would be sufficient to confer standing"); *Kawa Orthodontics, LLP v. Sec. U.S. Dept. of Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (plaintiff's subjective perception that defendant's conduct caused it harm is insufficient to establish Article III standing); *Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800-UU, 2012 WL 9391827, n. 5 (S.D. Fla. Oct. 18, 2012) ("The clear implication" taken from *Resnick* is that "a plaintiff who alleges only speculative harm would not have standing").

This Court has also followed the majority rule and has held that evidence of a data breach, without an actual misuse of personal information and accompanying monetary damages, is insufficient to satisfy the "injury in fact" element of Article III standing.  *See, e.g., Stapleton v. Tampa Bay Surgery Center, Inc.*, No. 8:17-cv-1540-T-30AEP, 2017 WL 3732102 (M.D. Fla. Aug. 30, 2017); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278 (M.D. Fla.

---

[12] A minority of courts have applied a more relaxed Article III standard in data breach cases.  *See, e.g., Remijas v. Neiman Marcus Group, LLC*, 794 F. 3d 688, 694-695 (7th Cir. 2015); *Krottner v. Starbucks Corp.*, 628 F. 3d 1139, 1142-43 (9th Cir. 2010).

2016); *Pankey v. Aetna Life Ins. Co.*, No. 6:16-cv-1011-Orl-37GJK, 2017 WL 1089330 (M.D. Fla. March 23, 2017).

In *Stapleton*, this Court held that parents who had provided sensitive information about their children to Tampa Bay Surgery Center, Inc. ("TBSCI") failed to allege "an injury in fact and, thus, lack[ed] standing to sue" after TBSCI's patient database was hacked and the minors' personal information was posted online, because no patients actually "had their information misused as a result of the data breach." *Stapleton*, 2017 WL 3732102, *1. Like Plaintiff in the present case, the plaintiffs in *Stapleton* attempted to allege an injury in fact based on the proposition that they were "compelled to incur the cost of credit monitoring/identity theft protection" because they were at an "increased risk of having their identity stolen." *Id.* TBSCI, in turn, moved to dismiss the complaint for lack of standing.

In addressing TBSCI's motion, this Court cited *Resnick* for the proposition that a plaintiff's "burden of proving standing" requires a showing that the plaintiff has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical ..." *Id.*, *2. Concluding that the plaintiffs' "allegations are insufficient to show that an injury is certainly impending or that they have a substantial risk of imminent injury," and noting that the plaintiffs were "unable to identify a single proposed class member who has had their Sensitive Information misused as a result of the data breach," this Court granted TBSCI's motion to dismiss. *Id.*, *3 (citing *Torres*, 195 F. Supp. 3d at 1283). This Court went on to reject the plaintiffs' argument that the "mere fact that there was a data breach is sufficient to constitute an imminent injury," stating it could not "agree with that sort of *ipse dixit* reasoning" and concluding that "[s]omething more than the

13

mere data breach must be alleged before plaintiffs can show they have a substantial risk of injury." *Id*.

This Court reached a similar conclusion in *Torres*, 195 F. Supp. 3d 1278 ("*Torres I*").[13] In *Torres I*, the plaintiff filed a putative class action against Wendy's based on a data breach at the restaurant, but unlike Plaintiff in this case, the *Torres I* plaintiff identified at least some minimal evidence of a misuse of his credit card information following the breach. *Torres I*, 195 F. Supp. 3d at 1280. Specifically, the plaintiff alleged that his credit union had contacted him shortly after he made a purchase at a Wendy's restaurant to advise that his card had been used to make two unauthorized purchases, and that shortly thereafter, Wendy's announced it had discovered malicious malware on its payment processing system. *Id*. He further alleged that he faced years of constant surveillance and monitoring of his financial and personal records as a result of the data breach. *Id*. Wendy's, in turn, moved to dismiss the class action complaint based on the plaintiff's failure to allege a cognizable injury in fact for purposes of Article III standing. *Id*.

In resolving the motion, this Court noted that the case "presents the issue of when, exactly, the loss or theft of an individual's data becomes a concrete injury for purposes of establishing standing." *Id*. at 1281. Wendy's argued that the plaintiff had not alleged an actual loss because he had not claimed that the fraudulent charges went unreimbursed or that he had suffered any other unreimbursed costs in connection with the alleged fraudulent charges. *Id*. at 1281-82. Noting that "other district courts have concluded that mere

---

[13] After his complaint was dismissed, the *Torres I* plaintiff filed an amended complaint claiming he had not only experienced a misuse of his card information but had also incurred a late fee as a result of the Wendy's data breach, and adding six new plaintiffs who allegedly had "experienced credit or debit card fraud" from the breach. *Torres v. Wendy's Int'l, LLC*, No. 6:16-cv-210-Orl-40DCI, 2017 WL 8780453 (M.D. Fla. March 21, 2017) ("*Torres II*").

fraudulent charges on debit or credit cards do not rise to the level of actual identity theft sufficient to establish standing" and concluding that the plaintiff had "not alleged a monetary harm stemming from the two fraudulent charges," this Court followed "*Resnick* and the majority of district courts that have addressed this issue" and found that the plaintiff had not alleged an "actual harm sufficient to establish injury-in-fact." *Id*. at 1283.

This Court also rejected the plaintiff's contention that a "risk of future identity theft and fraud" satisfied the *Clapper* "imminent threat of future harm" requirement, concluding that the "majority of courts post-*Clapper* have rejected the threat of future harm in data breach cases as insufficient to confer standing absent allegations that harm is 'certainly impending.'" *Id*. Following the majority rule, this Court concluded that any "increased risk of future identity theft" plaintiff suffered as a result of the data breach was insufficient to satisfy the *Clapper* injury in fact test. *Id.* This Court further determined that the plaintiff's allegation that he had suffered "ascertainable losses in the form of out-of-pocket expenses" to mitigate the data breach was also insufficient to satisfy Article III injury in fact because plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fear of hypothetical future harm that is not certainly impending." *Id*. at 1284 (citing *Clapper*, 133 S. Ct. at 1151.) In this regard, this Court noted that the "majority of courts in data breach cases have held that 'the cost to mitigate the risk of future harm does not constitute an injury in fact unless the future harm being mitigated against is itself imminent,'" and concluded that "it does not appear that the risk of future harm being mitigated against is imminent." *Id*. (citing *In re. SuperValu*, No. 14-MD-2586 ADM/TNL,

2016 WL 81792, at *7 (D. Minn. Jan. 7, 2016)).  Therefore, this Court dismissed the *Torres I* Class Action Complaint for lack of subject matter jurisdiction.  *Id*. at 1285.

*Stapleton* and *Torres I* support an order from this Court dismissing the Complaint in this case.  Like the plaintiffs in *Stapleton*, Plaintiff has not alleged that his credit card information was actually "misused" as a result of the data breach and he has therefore failed to allege an injury in fact sufficient to satisfy Article III standing.  *Stapleton*, 2017 WL 3732102, *3 (plaintiffs who were "unable to identify a single proposed class member who has had their Sensitive Information misused as a result of the data breach" lack standing to sue).  And like the plaintiff in *Torres I,* Plaintiff does not have standing based on a risk of future identity theft or fraud, and he cannot "manufacture standing merely by inflicting harm" on himself in the form of out-of-pocket expenses he has incurred to mitigate the data breach based on his "fear [] of hypothetical future harm."  *Torres I*, 195 F. Supp. 3d at 1284; *see also Pankey*, 2017 WL 1089330, *5 (dismissing complaint for lack of Article III standing under *Torres I* and *Resnick* after determining that the plaintiffs' "allegation of 'future harm'" resulting from defendant's conduct is "too conclusory and speculative to establish standing at the pleading stage in this action").

Dismissal of the Complaint based on Plaintiff's failure to satisfy Article III standing is supported not only by this Court's decisions in *Stapleton, Torres I* and *Pankey*, but also by decisions of other district courts within the Eleventh Circuit.  *See, e.g., Case v. Miami Beach Healthcare Group, Ltd.*, 166 F. Supp. 3d 1315, 1320 (S.D. Fla. 2016) (class action complaint against hospital based on unauthorized disclosure of patient information in data base dismissed for lack of Article III standing where plaintiffs did not allege information "was

actually misused"); *Provost v. Aptos, Inc.*, No. 1:17-cv-02120-ELR,  2018 WL 1465766, **3,

5 (N.D. Ga. March 12, 2018) (plaintiff who identified a fraudulent charge allegedly resulting

from data breach lacked Article III standing because fraudulent charges on debit or credit

cards do not rise to the level of actual identity theft sufficient to establish standing and

arguments "as to future harm and mitigation efforts are speculative" under *Clapper*); *In re.

Community Health Systems, Inc.*, No. 15-cv-222-KOB, 2016 WL 4732630 (N.D. Ala. Sept.

12, 2016) ("allegations of time and money spent to investigate and/or mitigate the increased

risk of harm when that risk was not accompanied by misuse of the stolen data" do not satisfy

Article III standing).

Finally, the allegations of the Complaint establish that Plaintiff chose to cancel his

credit cards immediately after receiving notice of the breach, without evidence of any actual

misuse of his credit card information in the eight month period between his purported

purchases at PDQ and notification of the Data Breach.  Accordingly, Plaintiff is foreclosed

from claiming he has suffered any monetary loss caused by the breach.  The dismissal,

therefore, should be with prejudice.

## II.    PLAINTIFF FAILS TO STATE A CLAIM AS A MATTER OF LAW.

Plaintiff has also failed to state a claim for relief under Rule 12(b)(6) because he has

not alleged that he has suffered any monetary loss from the Data Breach, and he cannot

satisfy other necessary elements of his claims. *See, e.g., Resnick*, 693 F. 3d at 1324 (plaintiffs

must allege not only "monetary loss" but also that the defendant caused the plaintiff's harm).

In contrast with Article III standing, which "presents only a 'threshold inquiry'," Rule

12(b)(6) presents a "higher hurdle" which requires a plaintiff to plead "facts sufficient to

'raise a right to relief above the speculative level.'" *In re. SuperValu, Inc.*, No. 14-MD-2586 ADM/TNL, 2018 WL 1189327, *10 (D. Minn. March 7, 2018) (citations omitted).  As set forth below, all six counts of the Complaint fail to state a claim for relief as a matter of law and, therefore, should be dismissed with prejudice under Rule 12(b)(6).

A.    <u>**Count I – Breach of Implied Contract.**</u>

"Under Florida law, a contract may be implied by law or fact." *Brush v. Miami Beach Healthcare Group, Ltd.*, 238 F. Supp. 3d 1359, 1368 (S.D. Fla. 2017) (citations omitted).  A contract implied in fact, as alleged in this case, requires the same elements as an express contract. *Jenks v. Bynum Transport, Inc.*, 104 So. 3d 1217, 1224 (Fla. 1st DCA 2012).  The elements of an action for breach of contract are (1) a valid contract, (2) a material breach, and (3) damages. *Beck v. Lazard Freres & Co., LLC*, 175 F. 3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)).

Count I fails to state a claim as a matter of law because Plaintiff has not alleged any monetary damage he has suffered as a result of the Data Breach.  Moreover, by electing to cancel his credit cards based on a "fear" of misuse in the future versus an <u>actual</u> misuse of the cards, Plaintiff has prevented any future use of his information and therefore foreclosed his ability to claim monetary injuries caused by the Data Breach.  Finally, his allegation that PDQ is liable for breach of an "implied contract" by "failing to provide timely and accurate notice" of the Data Breach is barred as a matter of law under section 501.171(10), Florida Statutes, which expressly prohibits a "private cause of action" arising out of an alleged failure to provide timely notice of a security breach.  And even if Plaintiff's claim were not precluded by section 501.171(10), it would still fail because the notice incorporated in the

Complaint establishes that customers were timely notified of the breach within two weeks of PDQ learning that a "Breach of Security" had occurred as that term is defined in section 501.171(1)(a), Florida Statutes.  Count I, therefore, should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim as a matter of law.

**B.**   **Count II – Negligence**.

Plaintiff's Count II claim for "negligence" arising out of PDQ's alleged breach of its "duty" to "exercise reasonable care to secure and safeguard" its customers' credit card information and to "promptly notify them" about a data breach also fails as a matter of law. Under Florida law, a negligence claim has four elements:  (1) a duty, (2) breach of that duty, (3) causation, and (4) damages.  *Virgilio v. Ryland, Group, Inc.*, 680 F. 3d 1329, 1339 (11th Cir. 2012) (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010)). Assuming Plaintiff could establish that PDQ owed a duty to its customers to prevent a third-party hacker from accessing its customer data (which Defendant does not concede), Plaintiff's claim would still fail as a matter of law because he has not identified any actual injury or "damage" he has suffered as a result of the PDQ Data Breach.  Moreover, Plaintiff's prophylactic cancellation of his credit cards without evidence of any actual misuse of his information prevents him from claiming any future monetary loss arising out of the breach. Finally, Plaintiff's claim that PDQ breached its duty to "promptly notify" its customers of the Data Breach also fails as a matter of law under section 501.171(10), Florida Statutes, which prohibits a "private cause of action" based on a commercial entity's alleged failure to promptly notify a customer of a data breach.  Count II, therefore, should be dismissed with prejudice for failure to state a cause of action.

**C.**     **Count III – Negligence *Per Se***

In Count III, Plaintiff alleges that Defendant violated section 5 of the Federal Trade Commission ("FTC") Act by "failing to use reasonable measures to protect Customer Data" and that Defendant's alleged violation of the Act "constitutes negligence *per se*."  Compl. ¶¶ 126-128.  Plaintiff's claim fails as a matter of law not only because he has not alleged he has suffered any "damage" resulting from the PDQ Data Breach, but also because Florida law prohibits plaintiffs from pursuing negligence *per se* claims based on statutes, like the FTC Act, that provide no private right of action.  *In re. Community Health Systems, Inc.*, 2016 WL 4732630, *26-27 (noting that § 5 of the FTC Act does not provide litigants with a private right of action and that the "laws of Florida prohibit plaintiffs from pursuing negligence *per se* claims based on statutes that provide no private right of action");  *see also Resnick*, 693 F. 3d at 1329 (dismissing claim for negligence *per se* on grounds that defendant is not subject to the statute upon which the claim is based).  Count III of the Complaint, therefore, should be dismissed with prejudice.

**D**.     **Count IV – Unjust Enrichment**

The elements of a claim for unjust enrichment under Florida law are:  (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit, (2) the defendant accepted and retained the benefit, (3) under circumstances making it inequitable for the defendant to retain the benefit without paying for it.  *Sheedy v. Adventist Health System Sunbelt Healthcare Corp.*, No. 6:16-cv-1893-Orl-31GJK, 2018 WL 3538441, *6 (M.D. Fla July 23, 2018) (citing *Duncan v. Kasim, Inc.*, 810 So. 2d 968, 971 (Fla. 5th DCA 2002)).  In Count IV, Plaintiff alleges that he "conferred a monetary benefit on PDQ" in exchange not

only for the "goods and services that were the subject of the transaction" but also for the protection of his customer data; and he seeks an order compelling PDQ to "disgorge" or "refund" amounts he and the class members allegedly "overpaid" PDQ for the goods and services in light of the Data Breach.  Compl. ¶¶ 133, 140.

The factual allegations of the Complaint, however, do not establish that (1) Plaintiff conferred a benefit on PDQ above and beyond the money owed for the goods he purchased, (2) that Plaintiff paid additional money for the goods in return for data security, and/or (3) that PDQ accepted more money from Plaintiff than was owed for the goods and services purchased.  Count IV, therefore, should be dismissed with prejudice based on settled case law rejecting unjust enrichment claims arising out of data breaches.  *See Brush*, 238 F. Supp. 3d at 1369 (dismissing claim for unjust enrichment in patient data breach action absent allegation that patient paid provider above and beyond money owed for medical treatment); *Case*, 166 F. Supp. 3d at 1320 (dismissing patient's claim for unjust enrichment after rejecting allegation that patient did not receive the services she paid for in light of the data breach); *In re. SuperValu, Inc.*, 2018 WL 1189327, *16 (dismissing claim for unjust enrichment where plaintiff did not allege the goods he purchased from the defendant grocery store were defective or that their value was somehow diminished by the data breach); *Schnuck Markets*, 887 F. 3d at 820 (affirming dismissal of unjust enrichment claim where card-paying customers paid retail merchant the same amount as those paying in cash).

E.     **Count V – Declaratory Judgment**

Count V seeks a declaration that "PDQ's existing data security measures do not comply with its contractual obligations and duties of care," and relief in the nature of an

injunction requiring PDQ to "implement and maintain reasonable security measures" in the future.  Compl. ¶ 147.  Such claims, however, have been routinely dismissed for lack of standing and/or failure to state a cause of action in other data breach cases.  *See, e.g., Kuhns v. Scottrade, Inc.*, 868 F. 3d 711, 718 (8th Cir. 2017) (affirming dismissal of claim for declaratory relief arising out of past data breach at securities brokerage firm); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1073 (C.D. Ill. 2016) (determining that plaintiff lacked standing to assert claim for declaratory judgment arising from data breach that already occurred and to recover for future injuries given that "allegations of possible future injury are not sufficient" and that "there is no risk to [plaintiff]" since she canceled her credit card account after receiving notice of the data breach); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, *8 (S.D. Cal. Nov. 3, 2016) (dismissing claim for injunctive relief or declaratory judgment ordering defendants to enhance their cyber security in the future because injunction "will not provide any relief for past injuries or injuries incurred in the future because of a data breach that has already occurred" and "psychic satisfaction is not an acceptable Article III remedy"); *Collins v. Athens Orthopedic Clinic*, 2018 WL 3134877, *5 (Ga. App. 2018) (affirming dismissal of claim seeking declaration that defendant must implement specific security measures and provide credit monitoring and identify theft protection in the future where plaintiffs "already have taken measures to protect themselves from negligent data security" and "'need no direction' to do so").  Count V, therefore, should be dismissed with prejudice for lack of Article III standing and/or failure to state a cause of action as a matter of law.

**F.**     **Count VI – Violations of Florida Unfair and Deceptive Trade Practices Act.**

To state a claim under the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") a plaintiff must allege a deceptive act or unfair practice, causation, and actual damages. *City First Mort. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). Plaintiff's FDUTPA claim should be dismissed with prejudice because Plaintiff cannot establish that he has suffered "actual damages" as a result of the Data Breach. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integ'd Sec., LLC*, No. 13-CIV-80371, 2015 WL 3905018, *33 (S.D. Fla. June 25, 2015) ("FDUTPA permits recovery for actual damages" or the "difference in the market value of the product or service in the condition in which it was delivered" versus in which it "should have been delivered"); *see also Case*, 166 F. Supp. 3d at 1319 (alleged difference between price paid for services and diminished value of services based on data breach not sufficiently concrete or particularized to meet jurisdictional requirements). The claim should be dismissed for the additional reason that Plaintiff has not alleged a "deceptive" or "unfair" practice arising out of the Data Breach. *See, e.g, Kuhns*, 868 F. 3d at 719 (determining complaint failed to plausibly allege how failing to discover and notify customers of a data breach qualifies as an unfair or deceptive trade practice). For the reasons set forth with regard to Count V, moreover, Plaintiff's request for "injunctive" relief requiring PDQ to undertake various measures to protect customer data and to perform other related acts in the future also fails as a matter of law. *See, e.g., Dugas*, 2016 WL 6523428, *8 (dismissing claim for injunctive relief ordering defendants to enhance their cybersecurity in the future given that an injunction "will not provide any relief for past injuries or injuries

incurred in the future because of a data breach that has already occurred").  Count VI, therefore, should be dismissed with prejudice for failure to state a claim as a matter of law.

## III.    PLAINTIFF HAS FAILED TO JOIN AN INDISPENSABLE PARTY.

Plaintiff has also failed to join indispensable parties under Rule 19 and the Complaint, therefore, should be dismissed under Rule 12(b)(7).  Specifically, Plaintiff purports to represent a nationwide class of individuals who used payment cards for transactions at various PDQ restaurants.  However, Plaintiff has only named as a Defendant Captiva MVP Restaurant Partners, LLC, which owns only some of the PDQ locations.  Plaintiff cannot pursue claims based on purchases at PDQ locations owned and operated by corporate entities other than Captiva, without joining those independent owners and operators as indispensable parties under Rule 19.  *See, e.g., Fla. Wildlife*, 859 F. 3d at 1320 (dismissing action under Rule 19 after concluding that Water District would suffer cognizable injury to its interests if the litigation proceeded without it); *see also C&J Global Investments, Inc. v. Knight*, No. 8:16-cv-1039-T-17AEP, 2017 WL 3701138, *3 (M.D. Fla. May 11, 2017) (dismissing action under Rule 19 where proceeding with the litigation would impair the interests of a non-party).  In short, because Plaintiff purports to represent a nationwide class of customers who purchased goods from various unidentified and potentially independently owned and operated PDQ restaurants, but has not joined the owners of those restaurants as party defendants, his claims also fail under Rule 12(b)(7) for failure to join indispensable parties.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendant respectfully requests that this Court dismiss the Class Action Complaint with prejudice under Rule 12(b)(1) for lack of Article III standing, under Rule 12(b)(6) for failure to state a cause of action as a matter of law, and under Rule 12(b)(7) for failure to join indispensable parties, as well as an award of reasonable fees, costs, and expenses in an amount deemed just and proper.

Respectfully submitted,

s/ Marie A. Borland
Robert A. Shimberg
Florida Bar Number 816043
Marie A. Borland
Florida Bar Number 847984
HILL, WARD & HENDERSON, P.A.
101 E. Kennedy Blvd., Suite 3700
Tampa, FL  33602
Tel.  (813) 221-3900
Fax  (813) 221-2900
robert.shimberg@hwhlaw.com
marie.borland@hwhlaw.com
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will provide electronic notification to all counsel.

s/ Marie A. Borland
Attorney

11469319v1